**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION**

**TAMMY COLE ON BEHALF OF K.R.C.,**

      **Plaintiff,**

**v.**                                         **CASE NO. 1:15-cv-06971**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

      **Defendant.**

<u>**PROPOSED FINDINGS AND RECOMMENDATION**</u>

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for child's Supplemental Security Income (hereinafter SSI) under Title XVI of the Social Security Act.

Claimant Tammy Cole, filed an application on behalf of her daughter, for children's SSI benefits on December 27, 2011. The application alleged a disability onset date of January 1, 2004. The claim was denied initially on February 23, 2012, and upon reconsideration on May 16, 2012. On July 11, 2012, Claimant requested a hearing before an Administrative Law Judge (hereinafter ALJ). The video hearing was held on November 6, 2013. Claimant appeared in Bluefield, West Virginia, and the ALJ presided over the hearing from Roanoke, Virginia. By decision dated November 29, 2013, the ALJ determined that Claimant was not entitled to benefits. On January 24, 2014, Claimant filed a request for review of the ALJ's decision with the Appeals Council (AC). The ALJ's decision became the final decision of the Commissioner on February 26, 2015, when

the Appeals Council denied Claimant's request for review.[1]  Subsequently, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under the authority of the Social Security Act, the Social Security Administration has established a three-step sequential evaluation process to determine whether an individual under the age of 18 is disabled.  20 C.F.R. § 416.924(a) (2015).  A child is disabled under the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

Under the regulations, the ALJ must determine whether the child is engaged in substantial gainful activity.  20 C.F.R. § 416.924(b) (2015).  If the child is, he or she is found not disabled. *Id.* § 416.924(a).  If the child is not, the second inquiry is whether the child has a severe impairment.  *Id.* § 416.924(c).  An impairment is not severe if it constitutes a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." *Id.*  If the child does not have a severe medically determinable severe impairment or combination of impairments, he is not disabled.  If a severe impairment is present, the third and final inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* § 416.924(d).  If the claimant's impairment meets or functionally equals the requirements of Appendix 1, the claimant is found disabled and is

---

[1]  The Notice of Appeals Council Action stated that medical records submitted by Claimant after the ALJ's decision "is about a later time" because the records are dated after the ALJ's decision, November 29, 2013.  Plaintiff's Brief in Support of Motion or Judgment on the Pleadings does not make any argument regarding these medical records.

awarded benefits.  *Id.* § 416.924(d)(1).  If it does not, the claimant is found not disabled.  *Id.* § 416.924(d)(2).  Other applicable rules are found at §§ 416.924a, 416.924b, and 416.929.

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the date her application was filed, December 27, 2011.  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of attention deficit hyperactivity disorder (ADHD), bronchial asthma, bipolar disorder, depression and behavioral problems.  At the third and final inquiry, the ALJ concluded that Claimant's impairments do not meet or functionally equal the level of severity of any listing in Appendix 1.  On this basis, benefits were denied.

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on November 12, 1998.  At the time of the hearing, K.R.C. was in the 9th grade.  She is not in special education classes and does not receive any special tutoring or assistance at school.

<u>The Medical Record</u>

The Court adopts the medical record findings asserted by Claimant and by Defendant, to an extent, as follows:

In 2011, K.R.C. went to Southern Highlands Community Mental Health Center for a series of medication management appointments.  From January through July 2011, K.R.C.'s condition was stable on Ritalin and Risperdal (Tr. at 349-55).  On August 18, 2011, K.R.C. indicated that her medications were working well:   she was able to concentrate well, and although she agitated easily, she had no major behavioral problems and was looking forward to going to back to school (Tr. at 348).  On September 15, 2011, she indicated that her medications were working well:  she was able to concentrate well, she had no behavioral problems, her mood was stable, she was enjoying school, and she had lots of friends (Tr. at 347).  On October 13, 2011, K.R.C. indicated that her medications were working well:  she was able to concentrate well, she had no behavioral problems, and her mood was stable (Tr. at 346).  On November 14, 2011, notes by Southern Highlands Community Mental Health Center (Southern Highlands)

state that Claimant's sister's boyfriend stole her Ritalin and as a result Claimant's behavior had been "very bad," and she was "noticeably hyperactive" (Tr. at 345).

On February 1, 2012, K.R.C.'s seventh-grade teacher, Jennifer Collis, completed a teacher questionnaire. Ms. Collis stated that K.R.C. had no problem or only a slight problem among nine activities in the domain of acquiring and using information, including comprehending oral instructions, reading and comprehending written material, participating in class discussions, expressing ideas in written form, learning new material, and applying problem solving (Tr. at 283). K.R.C.'s only more serious problem in this domain was in math, in which she was below grade level (Tr. at 282-283). Ms. Collis stated that K.R.C. had no problems in the domain of attending and completing tasks, including focusing long enough to finish an assigned activity, carrying out single and multi-step instructions, waiting to take turns, completing class/homework assignments, and working at a reasonable pace (Tr. at 284). Likewise, Ms. Collis indicated that K.R.C. had no problems in the domain of interacting and relating with others, including playing cooperatively with other children, making and keeping friends, expressing anger appropriately, and following rules (Tr. at 285). Ms. Collis also observed no problems in moving about and manipulating objects (Tr. at 286). In terms of caring for herself, Ms. Collis observed that K.R.C. had no problems, as she handled frustration appropriately, was patient when necessary, and responded appropriately to changes in her own mood (Tr. at 287).

In 2012, K.R.C. continued to go to Southern Highlands for medication management (Tr. at 375-382). Treatment notes indicated that she was doing "fairly well" (Tr. at 377, 380). K.R.C. continued her treatment at Southern Highlands in 2013. The April 29, 2013 evaluation indicated that K.R.C. complained of increased hyperactivity and irritability, but nothing more than mild concentration problems and mild manic episodes (Tr. at 389). The mental status exam showed that

K.R.C. had an anxious mood and affect, but good insight and judgment, logical thoughts, coherent speech, and full orientation (Tr. at 390).  Subsequent treatment notes consistently indicted that she was "stable":  her mood and affect were sometimes anxious, but her stream of thought was normal, she was cooperative and interacted well, her cognitive functioning was oriented and alert, her energy was good, insight/judgment were fair, and her memory was good (Tr. at 383-398).

<u>K.R.C.'s Testimony</u>

K.R.C. testified that she was in the ninth grade and that she had some bad grades in math because her teacher had not checked her make up work (Tr. at 94).  She stated that math and Spanish gave her the most trouble in school; the only other classes she was taking at the time were gym and art (Tr. 95-96).  K.R.C. testified that she was not in special education and did not receive any special tutoring or assistance at school (Tr.  96).   She stated that she did not participate in any extracurricular activities; for fun she liked to hang out with her family, read, and text (Tr. 96).  She stated that she also used a computer for Facebook and games (Tr. 104).

K.R.C. testified that she liked school "in a way" because there were some classes she liked, but math was just hard for her (Tr. at 100).  She stated that math was her hardest class and that she sometimes had to have math explained to her several times before she could understand it.   She stated that she had done well with reading the prior year, but had not had reading in the current school year. (*Id.*)  She testified that she reads and when she doesn't want to finish reading she watches TV and listens to music (Tr. 101).  She stated she could read for thirty to forty-five minutes (Tr. 102).   K.R.C. stated that her medicine had helped her to concentrate more and made her feel happier. (*Id.*)

K.R.C. stated that she likes to help other people in class; she stated that she sometimes gets squirmy if she has to sit still (Tr. at 101).   She stated that she agreed with her teacher's

statement that she did best when she had something to do all the time (Tr. at 102).    She testified that she had not gotten into any trouble in school during the current school year although she had been suspended "all the time" in pre-K and first grade (Tr. at 103).

K.R.C. testified that she had many friends at school and she had a best friend with whom she would hang out and this friend helped her with her problems (Tr. at 98).  She stated that she texted with her friend, but they had not gone to each other's houses in a while (Tr. at 104-105).  She stated that she talked with her friend about things she did not talk to her doctor about; she said she got sad and cried when talking with her friend (Tr. at 106).

K.R.C. testified that she sometimes thinks she is sadder than other people and that things upset her more. (*Id.*)  She stated that she lost her temper a lot with her mom, dad, her best friend and she lost her temper if someone said a certain thing and it set her off (Tr. at 106-107). She stated that she had lost her temper a lot lately because she had been in a depressed mood and she wanted to be left alone (Tr. at 107).

K.R.C. testified that she had the chore of doing dishes on the weekend and she sometimes had to be reminded to do them (Tr. at 108).  She stated that she kept her room clean without reminders (Tr. at 108-109).  She stated that her mother woke her up in the mornings and she got herself ready for school although sometimes she did not care how she looked (Tr. at 109).

K.R.C. testified that she was seeing her doctor once per month and at that time the doctor talked to her about her medicine, how she was doing in school, and how her depression was (Tr. at 96-97).  She stated that there were certain things she could not talk to her doctor about (Tr. at 105). She stated that the last time she was at the doctor's her dog had just been put down and her aunt had recently died; she talked to the doctor about these things but it was hard

(Tr. at 105).   She stated that she was taking Ritalin, Risperdal, and Klonopin (Tr. at 97). She stated that she thought speaking to the doctor or counselor once per month was helpful but she did not enjoy talking to them (Tr. at 97).

K.R.C. testified that she used her inhaler twice a day, which helped with her breathing problems (Tr. at 97-98).  She stated that if she had trouble breathing in school the teachers let her sit out until she got her breath back (Tr. at 98).  She stated that her worst trouble in gym class was running back and forth repetitively (Tr. at 99).  She stated she usually had to quit and use her inhaler and her teacher was nice about letting her do that.

<u>Claimant's testimony</u>

Claimant, Tammy Cole on behalf of K.R.C., testified that K.R.C. does see her doctor once per month, but the doctor visits do not always help (Tr. at 111).   She noted that K.R.C. had been moody a lot lately and had not been herself.   Claimant stated that the medications were working although her Risperdal had been increased because her bipolar had worsened (Tr. at 111).  Claimant testified that K.R.C. had started lashing out at everyone; even with her medications she still had a temper (Tr. at 124).   Claimant testified that K.R.C. lost her temper over anything and it had been happening a lot lately (Tr. at 124).  Claimant stated that K.R.C.'s loss of temper resulted in verbal outbursts, not physical (Tr. at 125).  Claimant stated that she had received no reports from the school that K.R.C. had acted inappropriately at school (Tr. at 124).

Claimant testified that K.R.C. separates herself by going to her bedroom and listening to music or watching TV (Tr. at 125).  She stated that K.R.C. does read for thirty to forty-five minutes at a time.  (*Id.*)  Cole testified that she does notice K.R.C. being fidgety or antsy and noted that to wake her up each morning she has to go into her bedroom two times (Tr. at 126).

She noted that there are things that K.R.C. will not talk to her about, keeping them to herself instead (Tr. at 128).

Claimant stated that K.R.C. uses her inhaler if she is running or something like that and her asthma symptoms were worse in the spring and fall (Tr. at 127). Claimant testified that prior to being prescribed medication, K.R.C. had done things such as trying to burn the house down, stabbing another girl with a fork, and pulling the fire alarm at school (Tr. at 111). She stated that when K.R.C. was finally put on medications, it took quite a few attempts to get her regulated to the point where she was at the time of the hearing. (*Id.*) Claimant stated that now that she was older her bipolar was more prominent and it was "rough" (Tr. at 112-113). She stated that at times the doctor's appointments were more than thirty days apart and when K.R.C. ran out of medication she was "10 times worse" (Tr. at 113, 117). Claimant stated that she had not noticed any side effects from the medications K.R.C. was taking at the time of the hearing (Tr. at 114).

Claimant testified that K.R.C. was able to read well, but she struggled in math and Spanish (Tr. at 113). She stated that K.R.C. is able to tell time on a digital clock, but struggled with using analog clocks (Tr. at 114). She testified that K.R.C. was able to answer the telephone and give her a message if she did it right away; however, if time passed she forgot about the message until a couple of days later. Claimant testified that K.R.C. would not use the bathroom at school for bowel movements and when she had bowel movements at home she stripped all of her clothing off beforehand (Tr. at 114-115).

Claimant testified that if she asked K.R.C. to help with a task such as cooking she "puts up a fit" (Tr. at 115). She stated that K.R.C. was capable of expressing her opinion, but did not do so appropriately. Claimant testified that K.R.C. "comes out with an attitude and just

starts screaming and hollering and everything" and that "[s]he just doesn't talk calmly." (*Id.*) Claimant testified that she withdrew privileges as a method of disciplining K.R.C. (Tr. at 115-116).

Claimant testified that K.R.C. picked out her own clothing and dressed herself and other than wearing mismatched socks, she dressed appropriately (Tr. at 116). She noted that K.R.C. did dishes on the weekend and generally did them okay. She stated that if K.R.C. had a problem she sometimes asked for help. (*Id.*)

Claimant testified that she only knew of one friend that K.R.C. had and it was a girl who had been in class with her since kindergarten; K.R.C. got along well with that friend (Tr. at 118). Claimant testified that K.R.C. had been bullied in school to the point where she had gotten the State Patrol involved the prior school year and had gotten the principal involved during the current school year (Tr. at 119). K.R.C. told her about the bullying and cried about it. (*Id.*)

Claimant testified that K.R.C. had generally gotten good grades, but she was getting Ds and Fs in math and Spanish in the current school year (Tr. at 120). Claimant testified that K.R.C. usually did her homework at a certain time; there were times she had remind her to keep working on it (Tr. at 122). She testified that K.R.C. was sometimes forgetful and needed to be reminded of doctors' appointments and chores sometimes (Tr. at 122-123). She stated that the "one thing" that K.R.C. did on her own was to keep her room clean without reminders (Tr. at 123).

## Claimant's Challenges to the ALJ's Decision

Claimant's sole argument is that the ALJ erred in not finding K.R.C. or Claimant to be credible (ECF No. 10). Defendant asserts that Claimant has not presented any medical opinions that contradict the ALJ's conclusions (ECF No. 11). Defendant avers that the ALJ properly did

not give significant weight to the Claimant's testimony because it is not consistent with the preponderance of the opinion and observations by the medical doctors in this case.

<u>Discussion</u>

The Social Security Act defines disability as the inability to do any substantial gainful activity by reason of any medically determinable impairment, "which can be expected to result in death, or which has lasted or can be expected to last, for a continuation period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, an individual must have a severe impairment that precludes her from performing not only her previous work, but also any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A) and § 1382c; 20 C.F.R. §§ 404.1505(a) and 416.912. The claimant bears the ultimate burden of proving disability within the meaning of the Act. *See* 42 U.S.C. § 423(d)(5)(A) and § 1382c; 20 C.F.R. §§ 404.1512(a) and 416.912.

In the present matter, **Claimant asserts** ALJ's reliance on Claimant's relationship with K.R.C. to discredit her testimony was erroneous (ECF No. 10). Claimant relies on a North Carolina District Court decision for support and cites the following:

> The mere fact that Claimant's mother is a family member is not a sufficient reason to reject her statements. As stated in 20 C.F.R. §§ 404.1513(d) and 416.913(d), the Social Security Administration will, "in addition to evidence from the acceptable medical sources... also use evidence from other sources to show the severity of [plaintiff's] impairment(s) and how it affects [his] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d). Such other sources include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. §§ 404.1513(d)(4),416.913(d)(4).
>
> Thus, lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis constitutes evidence that the ALJ must consider. *Nance v. Astrue*, 2011 U.S. Dist. LEXIS 120890, *32-34 (E.D.N.C. Sept. 20, 2011).

Defendant argues that the current matter is distinguishable from *Nance*.  In *Nance*, the court rejected the ALJ's other stated reasons for discounting the claimant's mother's testimony, leaving the family relationship as the only reason not rejected.  The court held "The mere fact that claimant's mother is a family member is not a sufficient reason to reject her statements."  Id. Distinguishing the present case was the ALJ's statement that "Most importantly, significant weight cannot be given to the witness' testimony because it, like the claimant's, is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case" (Tr. at 75).

The Fourth Circuit has held that familial bias did not merit remand because "the ALJ did not, in fact, discredit the observation of [the claimant's] family members solely because of inherent family bias." *Morgan v. Barnhart*, 142 F. App'x 716, 724 (4th Cir. 2005).  The court found that any error made in discounting the weight because of the family relationship was harmless because "substantial evidence support [existed] for the ALJ's decision to discredit [the claimant's] husband's and daughter's observations."  *Id.*

This Court has held "To the extent that the ALJ may have improperly discredited the witness' testimony on the basis of familial and relational bias, that error was harmless as their testimony was inconsistent with the preponderance of the record" *See Beck v. Astrue*, No. 3:11-cv-00711, 2012 WL 3926018, at *20 (S.D.W.V. Sept. 7, 2012).

Courts have applied a harmless-error analysis in the context of Social Security appeals. One illustrative case provides:

> Moreover, "[p]rocedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988). The procedural improprieties alleged by [claimant] will therefore constitute a basis

for remand only if such improprieties would cast into doubt the
existence of substantial evidence to support the ALJ's decision.

*Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th

Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in

quest of a perfect opinion unless there is reason to believe that the remand might lead to a different

result."). Our Court of Appeals, in a number of unpublished decisions, has taken the same

approach. *See, e.g., Bishop v. Barnhart*, No. 03-1657, 2003 WL 22383983, at *1 (4th Cir. Oct 20,

2003); *Camp v. Massanari*, No. 01-1924, 2001 WL 1658913, at *1 (4th Cir. Dec 27, 2001);

*Spencer v. Chater*, No. 95-2171, 1996 WL 36907, at *1 (4th Cir. Jan. 31, 1996).

    Under 20 C.F.R. §§ 404.1513(d)(4) and 416.913(d)(4), the ALJ considers evidence

provided by "other non-medical sources," including spouses and friends of the Claimant. 20 C.F.R.

§§ 404.1513(d)(4) and 416.913(d)(4); *Morgan v. Barnhart*, 142 Fed. Appx. 716, 720 (4th Cir.

2005). Social Security Ruling 06-03p provides guidance on how to treat "other non-medical

sources." SSR 06-03p, at *5. "In considering evidence from 'non-medical sources' who have not

seen the individual in a professional capacity in connection with their impairments, such as

spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the

nature and extent of the relationship, whether the evidence is consistent with other evidence, and

any other factors that tend to support or refute the evidence." SSR 06-03p, at *6. The Ruling

emphasizes that "there is a distinction between what an adjudicator must consider and what the

adjudicator must explain." *Id.* at *6. Generally, the ALJ must "explain the weight given to these

'other sources,' or otherwise ensure that the discussion of the evidence in the determination or

decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id.* at

*6.

The Fourth Circuit has held that an ALJ's credibility findings are "virtually unreviewable by this court on appeal." *Darvishian v. Green*, 404 F. App'x 822, 831 (4th Cir. 2010)(citing *Bieber v. Dept. of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)); *Salyers v. Chater*, No. 96-2030, 1997 WL 71704, at *1 (4th Cir. Feb. 20, 1997) (unpublished) (an "ALJ's credibility findings… are entitled to substantial deference").  When evaluating a claimant's testimony, the ALJ first considers whether the claimant has one or more medically determinable impairments that could reasonably be expected to produce the symptoms alleged.  *See* 20 C.F.R. §§ 404.1529(b) and 416.929. If such an impairment(s) exists, the ALJ then evaluates the intensity, persistence and limiting effects of the alleged symptoms arising from these impairments to determine the extent to which the alleged symptoms limit the claimant's ability to work.  *See* 20 C.F.R. §§ 404.1529(c) and 416.929.

As the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations.  *See*, *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984) (stating that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight").

The Social Security Administration recently issued Social Security Ruling 16-3p, 2016 WL 1119029 (March 16, 2016) ("SSR 16-3p"), which provides new guidance for ALJs to follow when evaluating a disability claimant's statements regarding the intensity, persistence, and limiting effects of symptoms. SSR 16-3p replaces Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p"). SSR 16-3p eliminates the term "credibility" used in SSR 96-7p and clarifies "adjudicators will not assess an individual's overall character or truthfulness." SSR 16-3p, 2016 WL 1119029, at *1, 10. That is, "[t]he change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character," but "obviously

administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin,* 2016 WL 3997246, at *1 (7th Cir. July 26, 2016).

The undersigned respectfully recommends that the District Judge find that the ALJ properly evaluated the evidence of record in keeping with the applicable regulation related to review of childhood disability. The ALJ's finding that Claimant's impairments do not meet or equal the Listings is supported by substantial evidence. The ALJ's findings are supported by the above-cited evidence of record, including evidence from Claimant's teacher, Southern Highlands Community Mental Health Center's treatment records, consulting psychologist and consulting osteopathist. The ALJ committed no err in finding that Claimant and K.R.C.'s testimonies cannot be given significant weight because they are not consistent with the preponderance of the opinions and observations by the medical doctors in this case. Therefore, regardless of familial relationship, substantial evidence supports the ALJ's determination that Claimant was not disabled under the Social Security Act.

<u>Conclusion</u>

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **AFFIRM** the final decision of the Commissioner, **DENY** Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10) and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days

(mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Faber and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:  August 23, 2016

Dwane L. Tinsley
United States Magistrate Judge